May it please the Court, Fred Rowley, Jr. for the Government. The District Court's suppression ruling violated basic principles of Fourth Amendment standing and causation. It violated standing principles because this defendant lacked any possessory interest or property interest that would permit him to challenge the vehicle search in which the vehicle was to be searched. It violated causation and taint principles because the sole constitutional violation suffered by this defendant, his illegal detention following the traffic stop, was not a but-for cause of the vehicle search that produced the gun. Regardless of whether the police detained this defendant or permitted him to leave, the car would have stayed at the scene, the police would have searched the car, and they would have found the gun. Two circuits have addressed analogous situations involving illegal passenger detentions, the Tenth Circuit and the Sixth Circuit. The Tenth Circuit addressed that scenario in two cases, the DeLuca case and the Nava Ramirez case. The Sixth Circuit addressed it in Carter. All of those decisions approach the problem precisely the same way. They hold in the first instance that the defendant lacked standing as a passenger, as a mere passenger, to challenge the search of the car directly. Then they turn to whether the defendant can challenge the search of the car indirectly. And what they find is that the defendant's detention on the side of the road following a lawful traffic stop doesn't predicate or occasion the search of the vehicle which follows, and for that reason, the evidence that's found inside the car is not tainted. Suppose there was a discussion with the passenger on the curb, and the passenger says, please don't look under the driver, the passenger side. My gun is there. Your Honor, that scenario would be a lot closer to the Jones case which the defense cites. In that situation, the police officer engages the defendant in a colloquy during the defendant's illegal detention on the side of the road, and the case could well be made that in that kind of scenario, the officer's decision to go into the car and look under the seat is based upon what the defendant told him during his illegal detention. In that kind of case, you might have causation. You might have but-for causation. But-for causation. That's right, Your Honor. Now, that doesn't necessarily mean that the evidence is tainted because, of course, but-for causation is a necessary but not a sufficient basis for taint. But, counsel, the explanation you give about the Jones case isn't exactly the rationale for the ruling in the Jones case. No, Your Honor. The rationale for the ruling was the unreasonable length of detention. Now, the situation here, as I understand the record, and this is the last of 40 cases this week, so feel free to correct me if, you know, was that they were-the stop was lawful, but then they were handcuffed? That's precisely right. Including the defendant? What justified the handcuff? Your Honor, the district court found, as you just pointed out, that the traffic stop was lawful, but that the detention was unlawful. And the government isn't challenging that result. So, in this case, the defendants- Doesn't that make this case more like the Jones case in that something in addition happened to trigger Pulliam's rights here to challenge the search while he was handcuffed? No, Your Honor, and here's why. In this case, the record is that the police didn't learn anything during this defendant's detention that caused them to go into the car. The driver of the car, Mr. Richards, testified, or I believe it might be in his affidavit, stated that the police did not ask him or the defendant whether they had any contraband in the car, the sort of question that Judge Wallace just posed. Let me ask you a different question. What is the legal or meaningful difference between a case where a car is illegally stopped, in which case the passenger can move to suppress the evidence, and where the car is legally stopped, but both are illegally detained? I mean, what is the – why is there a meaningful distinction there? Your Honor is focusing on a critical point, and here's what the difference is. When a passenger is illegally seized in a legal – in a legal traffic stop, this traffic stop was legal, but in a legal traffic stop case, that passenger's detention followed the traffic stop, and whether the police detained him or not does not affect their ability to keep the car there and search it and find the gun. And let me put it another way also, because it is an important point, Your Honor. When the police pull over a car, all of a sudden, the driver of the car, Mr. Richards,  all of the occupants in that car are seized in precisely the same way. It's the same action that seizes everybody in that car. And as a matter of pure physics, the rights have to be coextensive. You can't stop one of the people in the car without stopping all of the people in the car, because they're all in the car. Once the car is pulled over, and in this case the constitutional violation does not begin until the car is already pulled over, the detention of the passenger is separate and distinct from the detention of the driver. And that's very important because the Fourth Amendment case law has long held that Fourth Amendment rights are personal and that the Court must focus on the individual rights that have been violated as to the defendant, not as to other people. The Court cannot simply collapse this defendant's constitutional rights, his Fourth Amendment rights against an illegal seizure, into the driver's constitutional rights, which is what the district court did here, Your Honor. Well, what justified the search of the car? Your Honor, I believe that the district court found that there was no reasonable suspicion to search the car. So the search of the car was itself invalid. The problem is that this defendant doesn't have standing to challenge the search of the car directly. So the Court found that the traffic stop was valid, the defendant's illegal – the defendant's detention, excuse me, was illegal, and that the search of the car was also illegal. But that didn't violate any of the defendant's constitutional rights. He had no privacy interest in that car. But the police didn't have any right to go any further, whether it concerned Pulliam or the driver. They had no right to go any further. That's right, Your Honor. That's what the district court found. But again, this defendant doesn't have any constitutional right to challenge the search of the car directly. He doesn't have any privacy interest. The record is clear that this defendant doesn't own the car, doesn't have a possessory interest in the car, doesn't use the car. And for that reason, he simply cannot challenge that search directly. He must show a link between his constitutional violation, and that is his unlawful detention, and the search of the car that produced the gun. And this is something he simply cannot do. DeLuca and Carter are squarely on point. It's precisely the same reason, Your Honor. Is there a policy reason at issue here as to why we shouldn't allow evidence? I think Judge Hatter talked about this or touched on it, about why we shouldn't reward the police for several illegal. And in fact, the stop itself, although Hatter didn't find this, seemed questionable to me. I mean, they knew they were looking for this. I mean, what did they stop him for? Based on the light? It was the light. And they were really looking to find Pulliam, right? Your Honor, I want to reserve some time, but I'll answer your question. There's a couple of points to be made. The first point is, on the last comment that Your Honor made, there is no target standing. So whether, and we know this from rackets, so whether the police were focused on this defendant from the outset of their investigation when they saw him at the apartment complex is constitutionally irrelevant. The second point, and this is an important point, I take from Your Honor's question that Your Honor is concerned about deterrence. And deterrence wouldn't be furthered by the district court's ruling here. This is a preliminary point. It wouldn't be materially advanced in this case because a rational officer faced with this decision wouldn't illegally detain a defendant, a defendant passenger and illegally search the car knowingly on the off chance that the evidence would be admissible against the passenger. There's a couple of reasons for this. First, any rational officer would know that the driver would have standing to challenge whatever he found. So that's a strong disincentive. On the other hand, the officer would be guessing as to whether the defendant passenger would have some kind of interest in the car. Maybe he owns the car. Maybe he has a possessory interest in the car. The officer couldn't have any confidence that the defendant passenger wouldn't be able to challenge the search of the car as an indirect, direct or indirect violation. Another point is, and this is a point that's made in Rackus, any rational police officer would have to know in addition that he would face 1983 liability, potential 1983 liability, and also administrative penalties. So given the kind of speculation that the officer would need to get into, I don't think that deterrence is really furthered in this case. But even if it was, Your Honor, assume that there's some marginal benefit deterrence-wise flowing from the district court's ruling. The Supreme Court has made that balance already. There are countervailing social costs from the exclusionary rule. Otherwise relevant evidence is kept out of trial, as Your Honor knows, and there's a truth-seeking function that has to be observed. The way that the Court has balanced those interests, deterrence on the one hand, and on the other hand, the interest in having otherwise admissible evidence introduced at trial, is to restrict the exclusionary rule to violations of the defendant's constitutional rights. And in this case, the evidence that he wants to suppress is not related to his constitutional violation. All right. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. Elizabeth Newman for Mr. Pulliam. And thank you again, Your Honor, for putting this case over while I was otherwise engaged in argument. Your Honor, I'd like to begin by talking about the factual essence of this case, because I think when I was preparing for argument last night, it assumed a new meaning for me. Even if this Court should decide that the Tenth Circuit is correct and that a heightened but-for test has to be satisfied between Mr. Pulliam's own detention and the discovery of the gun, that test is satisfied because Mr. Pulliam was the impetus for everything that happened. The detention of Mr. Richards and the car were fruits in that sense of his own detention, and the search of the car was a fruit of that intervening detention. You just lost me on the fruits. Would there be any difference if he were allowed to walk away and was never held by the police? Well, Your Honor, this applies. Your question is an interesting one, because what the record evidence implicitly shows, and what at least Judge Hatter's ruling or decision-making implicitly shows, is that if the police had known that they had to follow the law and let Mr. Pulliam walk away, they would never have bothered to stop the car in the first place. Well, sure they would have. They did because the light was off. No, Your Honor. They said very frankly, and the district court agreed, Agent Sombrano said, when asked, why did you do this, he said, one of our ultimate goals is to identify persons who either are affiliates or associates with known gang members, and that in his view was Mr. Richards. But the light is out, it gives you a legal reason to stop, and you identify who the people are. Certainly he had a legal – they had a legal basis, Your Honor, but the impetus The reason, as Judge Wardlaw pointed out, and that the district court made a factual finding about, was they were looking for intelligence gathering with regard to this defendant. They started out by even saying what it is that they wanted, and the district court said that in, I think it's on excerpts of record, page 219 to 220. But the district court found the stop was legal. He did find – the district court did find that the stop was legal. But when we determine whether rights are violated, we don't go into the psyche of the police officer. We have to look at the objective process. Absolutely, Your Honor. So suppose that as he stopped, the police said, you can go, Mr. Pulliam, then there would have been no fruit, right? Your Honor, if they had said, you can go, Mr. Pulliam, the question that the government has raised is, would he have been allowed to leave with the car? In their view, that's the dispositive issue. I'm giving you a hypothetical. Okay, I'm sorry. So Pulliam then leaves. Yes. And then later on after he's gone, they search the car and find the gun. Yes. Can he object? He can object, Your Honor. Can he really? Yes, because the – I'm sorry, Your Honor. It depends on at what point they say, you can go, Mr. Pulliam. After he's gone, though? They stopped the car. They said, you can go. We don't – you can walk away if you want. It's up to you. He walks away. Oh, I see, Your Honor. I understand your question now. No, in that case, he would have neither standing to object to the search directly because he has no possessory interest in the car, nor any fruit analysis that would help him because there's no nexus whatsoever between anything that happened. No constitutional violation. No, Your Honor. There would not be. But that's not exactly what we have here. Okay. Then the second step is suppose he's not handcuffed. He's just said, wait there for a few minutes while we ask a few questions of the driver. And then they go ahead and search while they're doing it. Can he then object? It depends on whether wait there for a few minutes while we ask some questions of the driver is an illegal detention. He does it voluntarily. He's a concerned citizen. He agrees? He agrees to wait? He just stands there. I don't understand why that's a difference in constitutional but-for causation that the courts talk about than if he happens to have handcuffs on and he's illegally stopped and he just stands there. Because it's a question of what the primary illegality is considered to be in this case. What is it? The primary illegality is the detention of the car and its occupants collectively. Because that's what the dissent rule said.      You can't have a private property. Yes. As the court is going to say. That's Judge Seymour's position. That is Judge Seymour's position. And it's also. Not a him, by the way, a her. I'm sorry, Your Honor? Not a him, by the way, a her. I see.  The brief in the sex was changed. She is a she. She is a she. Well, her position, Your Honor, I think is the better one and was implicitly adopted by Judge Hatter in this instance. So you would follow. It isn't a question of following the majority. You started off saying that you would follow the majority test in DeLuca, but actually you're pressing for the minority position. No, I'm sorry, Your Honor. You're correct. That was. Now I understand your argument. I'm sorry, Your Honor. Thank you. You're right. I would like to also direct the Court's attention to Twilley, that the government makes attempts to distinguish by saying that there the stock was illegal and so everybody's constitutional rights were equally affected, as Mr. Rowley said this morning, essentially as a matter of physics. But the point of Twilley in this context, I think, is that no one ever required Mr. Twilley to make any sort of showing whatsoever that but for the violation of his own personal rights as a passenger, the evidence wouldn't have been discovered. There was nothing that connected him particularly, especially singled out as a passenger, and the violation of his singled out rights as a passenger conceptually severed from those of the driver or from those of the driver who had the possessory interest in the car from the fruit of the search. So there is no requirement in that case that he make any showing whatsoever that his own passengerial rights somehow led in a kind of a lockstep to the discovery of the contraband in that case. And I think Carter and DeLuca can both also be distinguished essentially on that ground. These cases are very different with respect to the passenger than our case here. DeLuca and Carter both involve drivers and passengers, but there was nothing specific as to the passenger there. In DeLuca, the driver's hand was shaking and everybody, three people actually, looked nervous, including the passenger DeLuca. And in Carter, the driver rushes out of the van and gives a crazy story about how he's been to visit his sister for a week but has no idea where she lives or even in what direction he would have to drive to get there. And so in neither case does the passenger seem to have added much to the mix. And so it makes, if you adopt a heightened but-for test, and if you accept, as the government asks you to, that the primary illegality in these cases is restricted to what happens to the passenger, here, yes, if you need a heightened nexus, there wasn't any in Carter and DeLuca. But there is a very much heightened nexus factually in this case. I'm just trying to follow what you're saying, follow your reasoning. What you're saying is that when looking at whether a factual, and tell me if I'm wrong, you're asking us to consider that when looking at a factual nexus analysis, you don't necessarily start from the point of the illegal detention. You can start by, you can look at the entire circumstances of the case. And here we start with the police officers wanting to investigate Pulliam. Are you arguing? Yes, Your Honor. In this case, because the police officers' desire to investigate Pulliam and to do anything they could to figure out who he was and what he was doing there prompted the stop. And so that his detention, his personal violation of his personal Fourth Amendment rights can be seen to have led directly to the detention of Mr. Richards in the car, which in turn led to the search of the car, which in turn led to the discovery of the gun. And so even if you're looking or adopting a heightened factual nexus test in which there has to be, you know, the tightest conceivable connection between Mr. Pulliam's detention and the discovery of the gun, you have it in this case. Now, our position legally is that that's not necessary, because there is no need for a heightened factual nexus test in an auto stop case like this, where it's perfectly clear and there's a clarity in the chain of events that occurred in the case. This is not like a wiretap case where there are 200 wiretaps, one was improper, and there has to be some kind of showing about how the one improper one tainted the evidence that was gathered throughout the whole investigation. This is a very clear and unquestioned series of events that doesn't really require any thinking. I mean, to say, to discover exactly what happened and why. So there's no need for a heightened factual nexus test at all. But if you need one, if the Court decides that one is appropriate, it's got one, because of the unusual facts of this case. And our position would be that this is implicit in the district court's ruling. And if the Court doesn't think it's implicit in the district court's ruling, then a remand is required. And a remand, on remand, Judge Hatter can clean up the record as to this issue And then as to another open factual issue, which is that the government says there's no showing that Mr. Pulliam would have been allowed to leave with the car if he had been allowed to leave, I think this goes back, in some respect, to your question, Judge Wallace. Probably wouldn't have been allowed to leave with the car by the driver, since he had no interest in the car. There's no evidence of that. There's no total speculation that he would have any claim to be able to leave with the car. I mean, that's speculation that can't be supported in the record. No, Your Honor. For that reason, there should be a remand to clean up. No. I think it's irrelevant is what I'm saying. Well, I agree with you, Your Honor, but the government thinks it's very relevant. And so I'm saying is that if the Court thinks that that's some kind of dispositive fact, I'm sure. Apparently, I don't. At least I don't. Very good, Your Honor. Then I won't say anything more to disturb you. Thank you, Your Honor. Thank you, Your Honor. I think we gave you 30 seconds or so. Yeah. You exceeded your time, too. Yes, Your Honor. A couple of points. First on the remand point, this issue, the issue of standing and causation, both of those were argued extensively below. The defendant had every opportunity to file a declaration, and all the evidence that's in the record is to the contrary on the point of standing. The defendant didn't have any interest in the car. The driver specifically stated the defendant didn't use the car. So no remand is required. On the Twilley point, the link in Twilley was obvious, again, because that was an illegal stop case. The traffic stop itself was illegal. Here the traffic stop was legal. It's only the defendant's detention that's on the table. And the link between that detention and the discovery of the gun is far from obvious. So Twilley's distinguishable. And then the third point is the detention in this case was not the impetus of the search of the car. The district court found and suggested that the police had decided to follow the defendant and Mr. Richards at the apartment for intelligence gathering purposes, I believe the district court found. That happened before the detention. On this record, there's simply nothing that happened during the detention that informed the officer's decision to search the car. They had already decided to do that. That's what the district court found. And the last point, if this Court were to treat everything that happened at that scene as a unit, the way that Judge Seymour suggested, it would accord this defendant third-party standing to assert Mr. Richards' rights in the car. And that would be directly contrary to settled Fourth Amendment cases, including Rackett's. Thank you, Your Honor. Thank you very much, Counsel. A U.S. v. Pulliam will be submitted, and the Court will adjourn this session.
judges: Wallace, T. G. Nelson, Wardlaw